**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ANITA M. ALKIRE,

     Plaintiff,

     v.

MARRIOTT INTERNATIONAL, INC.
     *et al.*,

     Defendants.

Civil Action No. 03–1087 (CKK)

**MEMORANDUM OPINION**
(April 5, 2007)

Pursuant to a jury trial held in this case commencing on March 14, 2006 and ending on March 16, 2006, the jury awarded Plaintiff Anita M. Alkire a judgment of $1,040,000, finding Defendant Marriott International, Inc. negligent as to its maintenance of an elevator and negligent as to Plaintiff's extraction from that elevator. *See* Jury Verdict Form. Presently before the Court are Defendant Marriott's [111] Motion for Judgment as a Matter of Law, or in the Alternative, for New Trial, or in the Alternative, to Alter or Amend the Judgment (Remittitur); and Defendant Marriott's [117] Motion to Strike Plaintiff's Surreply. After considering the aforementioned motions and the filings related thereto, the evidence in this case, and the relevant statutes and case law, the Court shall DENY Defendant Marriott's [111] Motion for Judgment as a Matter of Law, or in the Alternative, for New Trial, or in the Alternative, to Alter or Amend the Judgment (Remittitur); and GRANT Defendant Marriott's [117] Motion to Strike Plaintiff's Surreply.

## I.  LEGAL STANDARDS AND DISCUSSION

The Court notes at the outset that the Parties have chosen not to order a transcript of the proceedings and have cited to evidence from their memory of the proceedings and presumably

their notes.  The filings at issue clearly indicate that the Parties have different recollections of the

testimony at trial.  In order to be accurate, the Court has reviewed its own notes and an unofficial

trial transcript to ensure accuracy.  Accordingly, any citations included herein are to an unofficial

trial transcript that presently is not part of the Court record.  However, the evidence cited is a

reflection of the Court's memory of the evidence and its trial notes.

       *A.*      *Defendant Marriott is Not Entitled to Judgment as a Matter of Law*

       Rule 50 of the Federal Rules of Civil Procedure provides, in pertinent part, that a motion

for judgment as a matter of law made during trial may be renewed "by filing a motion no later

than [ten] days after entry of the judgment[.]"  Fed. R. Civ. P. 50(b).  Pursuant to Rule 50(a)(2),

"[a] motion for judgment as a matter of law may [originally] be made at any time before the case

is submitted to the jury.  The motion must specify the judgment sought and the law and facts that

entitle the movant to the judgment."  Fed. R. Civ. P. 50(a)(2).  "Under Rule 50, a court should

render judgment as a matter of law when 'a party has been fully heard on an issue and there is no

legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'"

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149, 120 S. Ct. 2097, 2109, 147 L. Ed.

2d 105 (2000) (quoting Fed. R. Civ. P. 50(a)) (citing *Weisgram v. Marley Co.*, 528 U.S. 440,

447-48, 120 S. Ct. 1011, 1016-17, 145 L. Ed. 2d 958 (2000)).  Entry of judgment as a matter of

law under Rule 50 is warranted only if "'the evidence and all reasonable inferences that can be

drawn therefrom are so one-sided that reasonable men and women could not' have reached a

verdict in plaintiff's favor."  *McGill v. Munoz*, 203 F.3d 843, 845 (D.C. Cir. 2000) (quoting

*Duncan v. Washington Metro. Area Transit Auth.*, 201 F.3d 482, 485 (D.C. Cir. 2000)).  "In

making that determination, a court may not assess the credibility of witnesses or weigh the

evidence," *Hayman v. Nat'l Acad. of Sci.*, 23 F.3d 535, 537 (D.C. Cir. 1994), nor may it

"substitute its judgment for that of the jury," *Boodoo v. Cary*, 21 F.3d 1157, 1161 (D.C. Cir.

1994). *See also Reeves*, 530 U.S. at 150, 120 S. Ct. 2097 (citations omitted); 9A CHARLES ALAN

WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2524, at 256-57 (2d ed.

1995) (on a motion for judgment as a matter of law, a court "must view the evidence most

favorably to the party against whom the motion is made"). "If reasonable minds could disagree

about the import of the evidence, judgment as a matter of law is inappropriate." *In re Lorazepam*

*& Clorazepate Antitrust Litigation*, 467 F. Supp. 2d 74, 80 (D.D.C. 2006). "In evaluating the

evidence, the court should not decide the motion based on which side it believes has the 'better

of the case.'" *Nyman v. Fed. Deposit Ins. Corp.*, 967 F. Supp. 1562, 1568 (D.D.C. 1997)

(quoting *Carter v. Duncan-Huggins, Ltd.*, 727 F.2d 1225, 1227 (D.C. Cir. 1984) (citations

omitted)). Because these functions are the domain of the jury and because the granting of a Rule

50 motion intrudes upon the jury's rightful province, "Rule 50 motions 'should be cautiously and

sparingly granted.'" *Id.* (quoting 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

PRACTICE AND PROCEDURE § 2524, at 541-45 (1971)); *see also Boodoo*, 21 F.3d at 1161 (the

granting of a judgment as a matter of law "is highly disfavored").

      While Defendant Marriott points out that the Court never ruled on the Rule 50(a) motion

it made at the close of Plaintiff's case, this was entirely appropriate, as pursuant to Rule 50(b),

"[i]f the court does not grant a motion for judgment as a matter of law made under subdivision

(a), the court is considered to have submitted the action to the jury subject to the court's later

deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(a). While Plaintiff claims

that Defendant Marriott is not entitled to renew its Motion for Judgment as a Matter of Law at

3

this juncture in the proceedings because it made its Rule 50(a) motion only at the close of

Plaintiff's case and not again at the close of Defendant's case, this is not settled law in this

Circuit.  "As a general matter, a party has been 'fully heard' for purposes of Rule 50(a) when the

party has submitted all of its evidence on the relevant claim or issue.  *See* 9 Moore et al., *supra,* §

50.20[2].  Accordingly, a defendant may move for judgment as a matter of law at the close of the

plaintiff's evidence.  *Id.*"  *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1149 (D.C. Cir.

2004).  *See also Fredrick v. District of Columbia*, 254 F.3d 156, 161 (D.C. Cir. 2001) ("Our

court has never squarely adopted th[e] general rule [that a defendant must renew its Rule 50(a)

motion at the end of all of the evidence or waive it]. . . .").  Therefore, the Court shall consider

the issues raised in Defendant Marriott's Rule 50(a) Motion made at the close of Plaintiff's case

at this time as renewed pursuant to Rule 50(b).

Upon reviewing the trial transcript, the Court notes that Defendant Marriott's Rule 50(a)

However, a post-trial motion for judgment as a matter of law may be granted only upon

grounds advanced in a pre-verdict motion; a movant who omits a theory from a pre-verdict Rule

50 motion waives the theory as a basis of a post-verdict motion for judgment as a matter of law.

*See Whelan v. Abell*, 48 F.3d 1247, 1251 (D.C. Cir. 1995); *U.S. Indus., Inc. v. Blake Constr. Co.*,

671 F.2d 539, 548 (D.C. Cir. 1982).  Accordingly, the Court will look only to the grounds

advanced in Defendant Marriott's Rule 50(a) Motion in deciding Defendant Marriott's post-trial

Motion for Judgment as a Matter of Law.

Upon reviewing the trial transcript, the Court notes that Defendant Marriott's Rule 50(a)

motion was advanced on two grounds, the first of which was explicitly denied:

> MR. LYNCH: It's a motion for judgment based upon the fact that this is on the claim for
> negligent maintenance, based upon the fact that the plaintiff testified that she was not hurt
> when the elevator came to a stop.  So, therefore, any negligence attached to the
> evacuation is too remote to be the proximate cause of plaintiff's injuries.

. . .

MR. LYNCH: The argument, Your Honor, is that negligence is too remote to be the proximate cause of her injuries.

THE COURT: Well, it seems to me that if you have the elevator and it stops because it wasn't maintained properly, which is their theme and they've got evidence through the expert relaying that, and then she is injured based on extricating, which wouldn't have occurred except for the fact that the elevator had stopped because it wasn't maintained properly . . . it's still a negligent maintenance.  I think it's probably enough at this point, so I'll deny it.

Tr. Trans. at 291-92.  In Defendant Marriott's Rule 50(b) Motion, Defendant again argues that

Plaintiff did not produce any evidence that the elevator malfunction was the proximate cause of

Plaintiff's injuries.  *See* Def.'s Mot. at 4, 24.  However, Plaintiff produced evidence of

foreseeability and causation through its introduction of the existence of national standards for

elevator maintenance and extrications, fire department regulations, and Marriott's own policy on

the dangers of extrication, all of which "refer to potential dangers of extricating someone from a

stalled elevator."  *See* Pl.'s Opp'n at 21; Tr. Trans. at 195-99, 201, 202-03.  Plaintiff's expert

further testified that the method of evacuation, requiring Plaintiff to jump approximately five feet

to the floor, "was incorrect" and "in violation of national standards."  Tr. Trans. at 199-200.  This

opinion was not rebutted at trial.

Judgment was reserved by the Court with respect to the second ground raised in

Defendant Marriott's Rule 50(a) Motion:  "MR. LYNCH: The second part of that is a lack of

notice to Marriott about the elevator history, and any notice about the events to them, there is

notice to the elevator company, but we're a separate company."  Tr. Trans. at 292.  After counsel

for Defendant Marriott, when asked by the Court, admitted that "[t]he specific notice defense

was not [previously] raised," Tr. Trans. at 294, the Court stated that "[s]ince this is coming up for

the first time, I will take it under advisement."  *Id.*

5

There is clear evidence in the record that Defendant Marriott was on notice of maintenance problems with its elevators.  Plaintiff's expert, Patrick Carrajat, designated without objection as "an expert in elevators, elevator operations, maintenance, and extraction," Tr. Trans. at 185-86, testified that passengers had been trapped in the elevator in question three or four times during the year in which Plaintiff was trapped.  Tr. Trans. at 187.  Furthermore, Marriott's own written procedure, which was offered into evidence and accepted without objection, indicates that a Marriott employee is responsible for contacting the elevator company every time an entrapment occurs.  Tr. Trans. at 202.  Finally, Defendant's own witness, Gene Kelly, a loss prevention officer for Marriott, testified that he had responded to numerous elevator malfunctions at the hotel, informing the elevator company thereof.  *See* Pl.'s Opp'n at 20-21; Tr. Trans. at 308, 309.  Defendant Marriott does not respond in any way in the briefs to Plaintiff's pointing out that evidence was introduced demonstrating that Marriott was on notice of the history of elevator malfunction with respect to Elevator 5, the elevator at issue.

Accordingly, the Court finds that Plaintiff presented evidence squarely addressing the two issues raised by Defendant Marriott in its Rule 50(a) motion (and renewed in its Rule 50(b) motion) such that the Court shall DENY Defendant Marriott's Motion for Judgment as a Matter of Law as taken under advisement and as renewed.

B.     *Defendant Marriott Is Not Entitled to a New Trial*

Federal Rule of Civil Procedure 59(a) provides that "in an action in which there has been a trial by jury, [a new trial may be granted] for any of the reasons for which new trials have heretofore been granted in actions at law . . . ."  Fed. R. Civ. P. 59(a).  The disposition of such a motion is a matter entrusted to the sound discretion of the trial court.  *Grogan v. Gen. Maint.*

*Serv. Co.,* 763 F.2d 444, 448 (D.C. Cir. 1985).  Relying upon this language, the Supreme Court

has consistently held that a new trial may be appropriate "'if the verdict appears [to the judge] to

be against the weight of the evidence.'"  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415,

433, 116 S. Ct. 2211, 2222, 135 L. Ed. 2d 659 (1996) (quoting *Byrd v. Blue Ridge Rural Elec.*

*Co-op.*, 356 U.S. 525, 540, 78 S. Ct. 893, 902, 2 L. Ed. 2d 953 (1958)) (alteration in *Gasperini*).

When assessing a motion for a new trial, "'the court should be mindful of the jury's

special function in our legal system and hesitate to disturb its findings.'"  *Nyman v. FDIC*, 967 F.

Supp. 1562, 1569 (D.D.C. 1997) (quoting *Lewis v. Elliott*, 628 F. Supp. 512, 516 (D.D.C. 1986)).

Accordingly, a district court should exercise its discretion "sparingly and cautiously," *Miller v.*

*Pennsylvania R.R. Co.*, 161 F. Supp. 633, 641 (D.D.C. 1958), and it should grant a new trial

"'only where the court is *convinced* the jury verdict was a "seriously erroneous result" and where

denial of the motion will result in a "clear miscarriage of justice."'"  *Nyman*, 967 F. Supp. at

1569 (quoting *Sedgwick v. Giant Food, Inc.*, 110 F.R.D. 175, 176 (D.D.C. 1986)) (emphasis

added).  Importantly, the trial court

> is not supposed to supplant the jury's view with that of its own and order a new trial
> simply because the court would have weighed the evidence differently from the jury.
> Rather the court's discretion to order a new trial is limited to those situations where
> the verdict represents a miscarriage of justice.

*Machesney v. Larry Bruni, M.D., P.C.*, 905 F. Supp. 1122, 1130 (D.D.C. 1995) (citing *Frank v.*

*Atl. Greyhound Corp.*, 172 F. Supp. 190, 191 (D.D.C. 1959)).  "Generally, a new trial may only

be granted when a manifest error of law or fact is presented."  *In re Lorazepam*, 467 F. Supp. 2d

at 87.

Defendant Marriott sets forth a number of grounds as the basis for its Rule 59 Motion for

a New Trial, stating that "[a]lthough each ground warrants a new trial standing alone, Marriott

urges the Court to consider their cumulative effect on the ultimate question of whether justice was served in this case." Def.'s Mem. at 1.  The Court will address each issue raised in turn, noting at the outset that Defendant Marriott is not entitled to a new trial on any of the following grounds, considered individually or cumulatively, in light of the evidence proffered by Plaintiff, Defendant Marriott's frequent failure to contest such evidence, and the jury's credibility decisions which the Court does not find to be against the weight of the evidence.

>    1.    Plaintiff provided substantial evidence demonstrating that Defendant
>           Marriott had notice of Elevator 5's maintenance problems

Defendant Marriott argues that "Plaintiff simply failed to introduce any evidence, let alone substantial evidence, that Marriott had notice of problems concerning Elevator 5 that it had ignored." Def.'s Mem. at 12.  Furthermore, Marriott argues that "Plaintiff failed to introduce evidence showing any specific dereliction by Marriott." *Id.*

The Court finds that the evidence set forth in its Rule 50 discussion of this issue is in fact substantial evidence, largely unaddressed by Defendant Marriott at trial, such that the Court shall reiterate its earlier points herein.  Namely, Plaintiff's elevator expert, Mr. Carrajat, testified after reviewing Defendant Marriott's records that passengers had been trapped in Elevator 5 at least three of four times during the same year in which Plaintiff was trapped.  Tr. Trans. at 187. Defendant did not call an elevator expert to counter Plaintiff's expert's testimony.  Furthermore, Defendant Marriott's own written elevator procedure, which was offered into evidence and accepted without objection, indicates that a Marriott employee is responsible for contacting the elevator company every time an entrapment occurs.  Tr. Trans. at 202.  Finally, Defendant's own witness testified that he had responded to numerous elevator malfunctions, informing the elevator company thereof via telephone.  Tr. Trans. at 308, 309.  "Plaintiff presented uncontested

8

expert witness testimony that Marriott violated both industry standards and engineering standards by not taking the elevator in which the Plaintiff was trapped out of service and addressing whatever was causing the frequent unscheduled stops." Pl.'s Opp'n at 8.  Furthermore, Defendant Marriott never argued that it was absolved from any duty, including taking the elevator in question out of service, by the mere existence of an independent contractor.[1]  Mr. Carrajat testified that he concluded after reviewing Elevator 5's records that "at some point the

---

[1]  Relevant jury instructions given by the Court include the following:

Person Lawfully Upon the Land–Definition of Duty Toward:  If a person is lawfully upon a hotel property, then the hotel owes a duty to that person to exercise reasonable care under the circumstances. This duty means, for example, that the hotel must exercise ordinary care under the circumstances to keep the premises reasonably safe and to avoid injuring that person.  The hotel has a duty to perform such inspections as a reasonable person would find necessary to detect or learn about any dangerous condition.  The hotel must repair dangerous conditions which are known to the owner, or should be known to the owner, but would not be readily apparent to the person coming onto the property. (Form 10-3).

Proximate Cause Defined:  An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from a preponderance of the evidence that the act or failure to act played a substantial part in bringing about the injury or damage. Moreover, it must be shown that the injury or damage was either a direct result or a reasonably probable consequence of the act or failure to act.  (Form 5-12)

Intervening Cause:  If you find that the defendant was negligent, but that the acts or omissions of a third person also contributed to causing plaintiff's injuries, then you have to decide whether the third person's acts or omissions were reasonably foreseeable.
If under the circumstances a reasonably prudent person would have reasonably foreseen the third person's acts or omissions and protected against them, then the defendant may be liable for the plaintiff's injuries.
If, however, a reasonably prudent person would not have foreseen the third person's acts or omissions and protected against them, then the defendant is not liable for the plaintiff's injuries.  (Form 5-14)

Neither party objected to Instruction Form 5-12.  Tr. Trans. 352.  Defendant did not object to Instruction Form 5-14 or Instruction Form 10-3.  Tr. Trans. 354, 380.

property owner, in this case Marriott, should have retained a skilled elevator consultant or engineer to come in, make an appraisal of the condition of the equipment, and make recommendations to correct it." Tr. Trans. at 187-88. Accordingly, the Court finds that substantial, unrebutted evidence supports Plaintiff's argument that Defendant Marriott had notice of the maintenance problems with Elevator 5 which it had a duty to address.

2.     <u>Plaintiff provided substantial evidence demonstrating that Defendant Marriott negligently extracted Plaintiff from the elevator</u>

Defendant Marriott argues that Plaintiff never provided substantial evidence that Marriott negligently extracted Plaintiff from the elevator because 1) "Plaintiff never identified a specific Marriott employee who participated in her evacuation"; 2) Plaintiff's witnesses allegedly gave "contemporaneous statements" in phone interviews with Marriott claims officials or attorneys that one or two Fire Department members were involved with the extraction, despite their testimony on direct examination regarding "an unidentified Marriott 'manager' in suit jacket" as having aided in the extraction; and 3) Marriott employee Gene Kelly and the Schindler/Millar report of the incident "confir[m] that the Fire Department handled the evacuations for all eleven passengers." Def.'s Mem. at 13. "The verdict, which credited Plaintiff's inconsistent testimony and that of her two supporting witnesses over the extensive contemporaneous evidence of what had occurred, is against the clear weight of the evidence and plainly warrants a new trial." *Id.*

Defendant Marriott's mis-characterization of the evidence is revealed by the trial testimony. While Plaintiff did not point to a "specific" Marriott employee who aided in the extraction, Plaintiff clearly provided substantial evidence that a Marriott employee extracted Plaintiff from the elevator. Plaintiff and Lauren Bertine both testified that one of the men assisting them out of the elevator was wearing a suit or sport coat and tie. Tr. Trans. at 127-29

10

(Plaintiff: "[W]e could see a gentleman in a suit who identified himself as a manager of Marriott . . . the gentleman to my left was the gentleman we had seen, the man in the suit who had introduced himself as the manager of the Marriott. And he was telling me it was okay, just move closer to the edge, and that he would help us. . . ."); 237, 241. Furthermore, "contradictory" statements by the witnesses that Marriott characterized as "contemporaneous" were actually made approximately five years after the incident, were not under oath, and were not conclusively contradictory. In fact, Ms. Bertine testified that a representative of Defendant Marriott called her approximately five years after the incident, and when she asked, "You're not trying to not pay for this, are you?" said representative admitted liability, stating "No, it's just the dollar amount that we're arguing about. We do know that it was our fault." Tr. Trans. at 239-40.

Finally, while Marriott's employee, Mr. Kelly, testified that he watched the extraction from the elevator and that it was conducted by the Fire Department, Tr. Trans. at 298-300, he also testified both that a Marriott emergency organization chief was at the elevator extraction and that a hotel manager was on duty that day. Tr. Trans. at 298, 306, 322. The Court finds that the jury could have credited the testimony of Plaintiff, Ms. Bertine, and Mr. Ray Ewing over that of Mr. Kelly. The Court notes that Mr. Kelly, a retired DC firefighter, *see* Tr. Trans. at 303, never testified that the extraction was performed correctly or incorrectly, and in fact testified that no safety netting was put up over the open elevator shaft, Tr. Trans. at 319-320. Furthermore, Mr. Carrajat provided uncontroverted testimony that even if the fire department had handled the extraction, "Marriott is the property owner, so I would think they would have a responsibility to say: 'Stop this. This is not the proper way to do it. People could be injured. Let's do it the right way.'" Tr. Trans. at 212. No witness from Schindler/Millar was called as a witness. The

11

Schindler/Millar report referenced by Defendant was not introduced into evidence; the Court

understands (as Defendant Marriott did not refute this in its Reply) that while the report indicates

that the fire department was present at the scene, it does not explicitly state who performed the

extraction.  *See* Pl.'s Opp'n at 9; Tr. Trans. at 210.  Finally, while Defendant Marriott claimed to

have a witness who was a passenger on the elevator who would support its position, and at

Marriott's request, the Court granted an emergency continuance of the trial such that said witness

would be able to attend, Marriott did not call said witness during trial nor read her deposition

testimony into the record.  *See* Pl.'s Opp'n at 10.  Accordingly, the Court finds that Defendant

Marriott has not met its burden in demonstrating that a new trial is warranted on this ground, as

Plaintiff provided substantial evidence that Defendant Marriott was involved in her extraction

from the elevator.

3.       Plaintiff presented substantial, credible evidence that her extraction from the elevator was the proximate cause of her knee injury

Defendant Marriott argues that "the jury's implicit finding that the elevator evacuation,

and not the motorcycle accident, was the proximate cause of Plaintiff's injuries also is against the

weight of the evidence."  Def.'s Mem. at 13.  However, the testimony of Plaintiff's expert

witness, Dr. Robert G. Loeffler, certified as an expert in orthopedic surgery at trial without

objection, based on his review of Plaintiff's medical records, supports that Plaintiff did not

sustain any lower body injuries as a result of the motorcycle accident, which bruised her

shoulder.  Tr. Trans. at 269-71.  Dr. Loeffler had examined Plaintiff and reviewed said medical

records from Plaintiff's treatment in San Francisco in addition to Plaintiff's other medical

records in determining that "the *only* knee trauma Plaintiff ever experienced was the fall from the

Marriott elevator extrication."  Pl.'s Opp'n at 5; Tr. Trans. at 260-61 ("Q: Doctor, all of the

records that you reviewed, the treatment since May 20th of 2000, the three surgeries that have

been performed, including the total knee replacement, within a reasonable degree of medical

certainty, are they all as a result of the incident in the elevator on or about May 20th of 2000?  A:

They are."), 280.  The Court finds it perfectly reasonable that the jury would credit Plaintiff's

expert's unrefuted testimony with respect to the medical records from Plaintiff's accident in San

Francisco to conclude that said accident had no effect on Plaintiff's knee over Defendant's

evidence of medical records from San Diego months after the accident indicating that Plaintiff's

knee had been "re-injured."  Pl.'s Opp'n at 12.  The Court further notes that Defendant Marriott

chose not to call its own medical expert (who had also examined Plaintiff) at trial.  *Id.*

4.   The Jury's award of $1,040,000 is not against the clear weight of the
     evidence

Defendant Marriott argues that the jury's damage award was against the weight of the

evidence because: 1) Plaintiff's negative x-ray prior to her motorcycle accident showed only a

"mild injury"; 2) Plaintiff provided no corroboration for her lost wages; 3) "[t]he motorcycle

accident was a clear superseding or independent alternative cause of her degenerative disease"; 4)

Plaintiff's unrebutted expert's testimony that she would need "one to two" future knee

replacements, Tr. Trans. at 264, was "speculative" (citing *Jefferson v. Milvets Sys. Tech., Inc.*,

986 F. Supp. 6, 8 (D.D.C. 1997)); and 5) Plaintiff's counsel made an "inflammatory argument"

during its closing argument regarding the risks of open-shaft evacuations (citing *District of*

*Columbia v. Colston*, 468 A.2d 954, 957 (D.C. 1983); *Schneider v. Lockheed Aircraft Corp.*, 658

F.2d 835, 847 (D.C. Cir. 1981); *Forman v. Pillsbury*, 753 F. Supp. 14, 19 (D.D.C. 1990)).  Def.'s

Mem. at 14-15.

However, upon review of testimony and evidence presented in this case, the Court finds

13

that the jury's award of $1,040,000 was not against the clear weight of the evidence because 1) it was reasonable for the jury to credit Plaintiff's medical expert witness in concluding both that Plaintiff's knee injury grew worse over time and was unrelated to the motorcycle accident (*see supra* at 12-13; Pl.'s Opp'n at 11 ("Dr. Loeffler testified that a sudden blunt trauma to the knee can begin a process of degeneration in which the knee joint loses density and elasticity.  Such an injury often results in the wearing away of the cartilage between the bones of the knee. . . .  This is what Dr. Loeffler believed to a reasonable degree of certainty happened to the Plaintiff."); Tr. Trans. at 253); 2) Defendant Marriott never contested Plaintiff's failure to corroborate her claim for lost wages during her absence from work after the incident and her three surgeries, to which she testified during trial (*see, e.g.,* Tr. Trans. at 135-137, 139, 149-150); 3) Plaintiff provided probative evidence of her need for future surgery, unlike the plaintiff in *Jefferson*, who did not provide probative evidence that his emotional distress prohibited him from working full-time (Tr. Trans. at 263-64, 280-81, *Jefferson.*, 986 F. Supp. at 8); and 4) notwithstanding the cases cited by Defendant Marriott, Plaintiff's closing argument was not improper, and Defendant Marriott did not object thereto at trial.  *See Colston*, 468 A.2d at 956-57 (holding that statements by counsel during the closing argument asking the jury to ask themselves what an eye is worth and to imagine what it would be like to not have an eye were not improper because "counsel must always be permitted to argue that his client's case is a serious one and to stress those aspects of the case that contribute to it seriousness"; *Schneider,* 658 F.2d at 847 (distinguished on other grounds) (concluding that counsel's summation remarks, including "[y]ou've got to help us with the money . . . (I)f you make a mistake, members of the Jury, there's no way you can correct it. You are going to have to live with it," among others, while inflammatory, would not in and of

14

themselves justify reversal).  The Court, in examining Plaintiff's counsel's closing argument,

concludes that Plaintiff's counsel never prejudicially "ask[ed] the jurors to place themselves in

the plaintiff's position or to 'do unto others as you would have them do unto you.'" *Colston*, 468

at 957.  Despite Defendant Marriott's allegations to the contrary, see Def.'s Mem. at 16-17,

Plaintiff's counsel did not ask the jury to send a message to Defendant Marriott by awarding "big

damages."  While Plaintiff's counsel did state, in his nearly 50-minute closing argument, that

"[y]ou've got to send this message that they were negligent.  They failed to protect the public,

whether it be a tourist or whether it be somebody in this community, and you as the community

cannot tolerate this.  It's unconscionable," Tr. Trans. at 414, the Court finds that this statement

focused on the jury's finding negligence (not awarding sizeable damages), and is not sufficiently

prejudicial to warrant a new trial.  And while Plaintiff's counsel also asked the jury to "think

about if you're sitting . . . on that ledge there, with a 6-foot shaft underneath you and your feet are

dangling, how would you feel if you were asked to jump?" Tr. Trans. at 401, the Court notes that

counsel's statement, though inartful, was never objected to by Defendant Marriott, and does not

ask the jury to place itself into Plaintiff's shoes with respect to her injury or the damages she

seeks, but only with respect to how inappropriate the extraction method was.  The Court further

notes that Plaintiff's counsel, in his rebuttal, actually asked the jury "to give it due deliberations,

consider all of the testimony here, and . . . come in with an appropriate verdict against Marriott

International."  Tr. Trans. at 434.  This closing argument belies any suggestion that Plaintiff's

closing argument and rebuttal, taken as a whole, were inflammatory or otherwise inappropriate to

a degree warranting a new trial or remittitur, particularly as Defense counsel did not object at the

time.

15

5.    Defendant Marriott is precluded from presently arguing that exclusion of the Fire Department log was improper

Defendant Marriott argues that "[t]he Court's failure to admit the Fire Department lo[g][2] materially prejudiced Marriott's case," stating that the log should have been permitted pursuant to Federal Rule of Evidence 803(8).  Def.'s Mem. at 17.  However, in a written pretrial motion, the Court ruled that the log would not be admitted based in part on Defendant Marriott's lack of knowledge regarding expected testimony surrounding the creation of the log.  No member of the D.C. Fire Department had a memory of the incident.  Notably, Defendant Marriott never moved to introduce the log at trial, nor objected to its exclusion during trial.  In its pre-trial Order, the Court had in fact invited Defendant Marriott to do so.  *See* [101] Order at 3 n.2 ( "If Lieutenant Spencer testifies that the log excerpt is in his own handwriting, the Court will consider a motion in court to admit the log excerpt to show that the D.C. Fire Department reported to the Wardman Park Marriott on May 20, 2000, with the following text redacted: 'Released 11 people fr. stalled elev[,]'" as Lieutenant Spencer could not testify as to whether this was based on his personal observation, observations of others, or some level of hearsay).  In fact, Lieutenant Spencer was never called to the stand at trial by Defendant such that he could not verify the authenticity of the document.  While the Court need not address the merits of Defendant Marriott's objection at this time, since said objection was never raised at trial, the Court incorporates the reasoning set forth in its eight-page Order with respect to the log, based on the characterization of the testimony to be presented by Marriott.  Marriott never supplemented the proffer or record at trial.

Accordingly, exclusion of the log does not provide a proper basis for granting Defendant

---

[2]  While Defendant Marriott references "logs" in the plural, the Court's (and the Parties') pre-trial discussions and Order dealt with only one log.

Marriott a new trial.

In sum, Plaintiff provided substantial evidence as to Defendant Marriott's negligence in maintaining Elevator 5 and extracting Plaintiff therefrom via the testimony of Plaintiff, other witnesses who were also trapped in the elevator, and its elevator expert, who delineated among other things the impropriety of the extraction and the impropriety of Defendant Marriott's keeping the elevator in service and not contacting a specialist in light of repeated elevator stalling.  Defendant Marriott only called one witness, Mr. Kelly, who did not know Marriott's elevator extraction procedures (see Tr. Trans. at 323), and whose testimony largely did not address or undercut the aforementioned concerns.  Defendant Marriott never introduced any evidence with respect to a maintenance contract with a third party (Schindler/Millar), nor whether that third party was qualified as an expert or specialist with respect to the repeated elevator stalling involved.  While Plaintiff's medical expert testified in great detail as to Plaintiff's injury, three surgeries (including the knee replacement), and other issues related to damages (in addition to Plaintiff's own testimony with respect to pain and suffering and activities she could no longer enjoy), such evidence was entirely unrebutted by Defendant, who did not call any witnesses to the stand on this point.  The Court finds that it was not improper for the jury to rely on the substantial evidence presented by Plaintiff, and accordingly, finds that Defendant Marriott has not met its burden in attempting to demonstrate that a new trial would be warranted.

C. *Remittitur of the Jury Award in this Case is Unwarranted*

The judiciary has developed certain principles with regard to the evaluation of a jury's damage award.

> In reviewing the amount of the jury's award, [the court] . . . need not -- and indeed cannot -- reconstruct the precise mathematical formula that the jury adopted.  Nor

17

> need [the court] explore every possible quantitative analysis or compute the basis
> of each penny and dollar in the award.  [The court's] inquiry ends once [it is]
> satisfied that the award is within a reasonable range and that the jury did not
> engage in speculation or other improper activity.

*Carter v. Duncan-Huggins*, 727 F.2d at 1238-39.  "A court must be especially hesitant to disturb

a jury's determination of damages in cases involving intangible and non-economic injuries."

*Langevine*, 106 F.3d at 1024 (citing *Ruiz v. Gonzalez Caraballo*, 929 F.2d 31, 34 (1st Cir. 1991)

("'[t]ranslating legal damage into money damages -- especially in cases which involve few

significant items of measurable economic loss -- is a matter purely within a jury's ken.'")).

This deference to the jury, based on the fact that the Seventh Amendment's right to a jury

trial pervades the realm of jury verdict decisions, may only be disturbed if the award (1) "is

beyond all reason, or . . . so great as to shock the conscience;" or (2) "is so inordinately large as to

obviously to exceed the maximum limit of a reasonable range within which the jury may

operate." *Jeffries v. Potomac Dev. Corp.*, 822 F.2d 87, 96 (D.C. Cir. 1987) (citations omitted).

"Courts may not set aside a jury verdict merely deemed generous; rather, the verdict must be so

unreasonably high as to result in a miscarriage of justice." *Langevine*, 106 F.3d at 1024 (citing

*Barry v. Edmunds*, 116 U.S. 550, 565, 6 S. Ct. 501, 509, 29 L. Ed. 729 (1886)).  In this circuit, a

court may remit a jury verdict only if the reduction "permit[s] recovery of the highest amount the

jury tolerably could have awarded." *Carter v. Dist. of Columbia*, 795 F.2d 116, 135 n.13 (D.C.

Cir. 1986).  The burden of establishing that the jury award is so excessive as to warrant a

remittitur rests with the moving party–in this case, Defendant Marriott.  *Carter v. Duncan-

Huggins*, 727 F.2d at 1239.  "The granting of a motion for remittitur is particularly within the

discretion of the trial court, and appellate review is therefore limited to determining whether

there has been an abuse of discretion." *Jeffries*, 822 F.2d at 96 (citations and internal quotations

18

omitted).

Defendant Marriott asks the Court to reduce the jury award of $1,040,000 to $240,000, Def.'s Mem. at 17, on the following grounds, none of which are viable:

(1) "Plaintiff's injury from the elevator evacuation was not a devastating injury," and "[P]laintiff's damages evidence was weak, showing limited long-term impairment, pain, and emotional distress." Def.'s Mem. at 20. However, Plaintiff presented extensive evidence of pain and suffering prior to and recovering from the knee replacement surgery and the prior two surgeries she underwent, years of pain, testimony from a medical expert as to her need to undergo at least one knee replacement in the future, and limitations on her ability to walk. *See supra* at 14; Tr. Trans. at 138 (Plaintiff: "[T]here was never a day that I was out of pain. There was never a day that my knee wouldn't swell by the end of the day . . . ."). While "devastating" is a subjective descriptor at best, Plaintiff clearly presented evidence demonstrating a painful, long-term injury producing various limitations, limiting lifestyle choices, and requiring future surgery.

(2) "[T]he award for non-economic damages of nearly $900,000 is not reasonably related to Plaintiff's claimed special damages of approximately $150,000 . . . ." Def.'s Mem. at 21. Defendant Marriot argues that "[a] wide disparity between the jury's special damages and pain and suffering awards is strong evidence of excessiveness." *Id.* (citing *George Washington Univ. v. Lawson*, 745 A.2d 323, 331 (D.C. 2000)).

However, the District of Columbia Court of Appeals in *Lawson*, after reviewing the evidence regarding the amputation of a portion Ms. Lawson's non-cancerous but nonetheless abnormal ring finger and subsequent flexibility limitations in two other fingers, explicitly "found

the evidence of lasting injuries insufficient to justify a verdict more than four times the size of the

special damages Ms. Lawson had reasonably incurred." *Lawson*, 745 A.2d 323 at 331.

Remittitur in *Lawson* rested not on the actual comparison between the size of the special

damages reasonably incurred and the total verdict, but on the actual extent of Ms. Lawson's

injuries and her claims for emotional damages for her depression and distress related thereto. *See*

*id.* at 330 ("Even if all of the claimed special damages are unblinkingly accepted as within the

generously expansive province of a munificent jury-and this the court cannot do-the jury still

awarded close to $2 million in pain and suffering to a highly anxious woman who had some past

physical pain, but currently is in no significant physical pain and is afflicted with feelings of

emptiness and loss that has led her to shy away from intimacy."). Thus, the Court in this instant

case does not find the comparison to yield the differential that appeared in *Lawson* and

distinguishes *Lawson* via the nature of the injury and physical pain and suffering in the present

case.

(3) "[T]his award is excessive compared to comparable cases and standards." Def.'s

Mem. at 22. However, while Defendant Marriott relies on Exhibit 1, attached to its Motion,

which it describes as a "chart listing remittiturs of compensatory damages granted in pertinent

D.C. cases)," *id.*, the Court notes that said chart does not provide a proper basis for comparison

regarding the "reasonableness" of Plaintiff's damage award, as it lists affirmative awards of

remittitur rather than a full panoply of damage awards such that it does not meet Defendants' aim

of allowing the Court "to consider what kind of damage awards have been returned in other,

somewhat comparable situations." *Id. See also Peyton v. DiMario*, 287 F.3d 1121, 1126 (D.C.

Cir. 2002) ("Because of the unique circumstances of each case as well as the adjustments which

would necessarily have to be made for inflation, it is awkward to discuss the size of an award

through comparison with past decisions.").

(4) "[T]here is strong evidence that the award was the product of passion, prejudice and

consideration of improper factors" because of "[c]ounsel's improper and inflammatory closing

argument."  Def.'s Mem. at 22-23.  The Court has already considered and rejected Defendant

Marriott's argument that Plaintiff's counsel's closing argument was "improper and

inflammatory" and rejected this premise.  *See supra* at 14-15.

As the Court rejects the factual premises stated above for Defendant Marriott's remittitur

arguments, it need not look to the cases listed in an Exhibit by Defendant Marriott to assess the

factual basis and reduction of award in said cases.  The Court notes, however, that upon

examining the descriptions of said cases as provided by Defendant Marriott, they do not provide

grounds warranting remitting the jury award in the instant case.

D.       *The Court Shall Strike Plaintiff's Surreply*

Plaintiff's Surreply, filed on April 21, 2006 without leave of the Court, attaches a chart of

"Sample Jury Awards in Excess of $1 Million in the District of Columbia."  On April 25, 2006,

Defendant Marriott filed its [17] Motion to Strike Plaintiff's "Surreply" on the grounds that

Plaintiff did not seek leave of the Court to file a Surreply and because the Surreply raises new

arguments and includes said chart, "apparently in an effort to counter the table of remittitur cases

appended to Marriott's *opening* memorandum."  Def.'s Mot. to Strike at 2.  As the Court finds

that Plaintiff did not seek leave to file a Surreply and because said Surreply introduces new

arguments and provides a chart of cases responsive to Defendant's initial filing, the Court shall

strike Plaintiff's Surreply.  The Court notes as a general matter, however, that procedural

missteps were taken by both Parties, as Defendant's counsel admitted to failing to consult with Plaintiff's counsel as instructed by Local Civil Rule 7(m) prior to filing motions pursuant to Rule 59.  *See* Def.'s Reply at 8 ("Marriott respectfully acknowledges that the case law cited by Plaintiff does apply the conference requirement to motions filed pursuant to Federal Rule of Civil Procedure 59(e)[.]").  *See also Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 26-27 (D.D.C. 2001).  However, in light of both Parties' failure to adhere strictly to the rules, the Court shall not entertain Plaintiff's suggestion that sanctions may be appropriate with respect to Defendant Marriott's counsel's omission.

## II.  CONCLUSION

For the aforementioned reasons, the Court shall DENY Defendant Marriott's [111] Motion for Judgment as a Matter of Law, or in the Alternative, for New Trial, or in the Alternative, to Alter or Amend the Judgment (Remittitur); and GRANT Defendant Marriott's [117] Motion to Strike Plaintiff's Surreply.  An Order accompanies this Memorandum Opinion.

Date:   April 5, 2007

                                                   _____
                                                       /s/
                                                 COLLEEN KOLLAR-KOTELLY
                                                 United States District Judge